# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 18-1971V
### UNPUBLISHED

| | |
|---|---|
| KEELY KNUDSEN,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: August 23, 2021<br><br>Special Processing Unit (SPU); Findings of Fact; Onset; Location of Injury; Influenza (Flu) Vaccine; Ruling on Entitlement; Table Injury; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for Respondent.

### **FINDINGS OF FACT AND RULING ON ENTITLEMENT**[1]

On December 27, 2018, Keely Knudsen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") caused by the influenza ("flu") vaccine she received on December 13, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has satisfied the requirements of a Table SIRVA, and is therefore entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

Soon after filing her petition, on January 7, 2019, Ms. Knudsen filed five medical record exhibits and a Statement of Completion. ECF No. 6-7. Those medical record exhibits were re-filed on April 28, 2019, along with her affidavit and Statement of Completion. ECF No. 9-10. (A year later, Petitioner filed an additional medical record exhibit on February 24, 2020 (ECF No. 19)).

On December 16, 2019, Respondent filed a status report indicating that he believed all required medical records had been filed, and expressing his willingness to engage in litigative risk settlement discussions. ECF No. 16. After a period of negotiation, however, Petitioner alerted me in July 2020 that the parties had reached an impasse and requested a status conference. ECF No. 24. A status conference was held on November 10, 2020, after which Respondent was ordered to file a Rule 4(c) Report to identify the areas of disagreement. ECF No. 25.

In his Rule 4(c) Report, filed January 11, 2021, Respondent argued that Petitioner had failed to satisfy two requirements necessary to prove that she suffered a Table SIRVA injury. ECF No. 26, at 4. Specifically, Respondent maintained that "no medical records describe the onset of right arm or shoulder pain occurring within forty-eight hours of the December 13, 2017 flu vaccination." *Id.* at 5. Further, Respondent argued that "[P]etitioner's pain was not limited to her left[3] shoulder." *Id*.

Following the filing of Respondent's report, a status conference was held on March 3, 2021. Petitioner was thereafter instructed to file any additional evidence in support of her claim, and then a Motion for Ruling on Entitlement within 21 days of her Amended Statement of Completion. ECF No. 27. On April 5, 2021, Petitioner filed a supplemental affidavit, affidavits from her husband and her mother, and an amended statement of completion. ECF No. 28-29.

On April 28, 2021, Petitioner filed a Motion for a Ruling on Entitlement ("Mot."). ECF No. 30. Respondent filed his response on May 26, 2021 ("Opp."). ECF No. 32.

---

[3] Respondent acknowledges that Petitioner received the flu vaccination in her right deltoid and reported injury to her right shoulder throughout his Rule 4(c) report, suggesting a simple typographic error in this sentence. *See* ECF No. 26.

Petitioner filed a reply on June 2, 2021 ("Rep."). ECF 34. Petitioner's Motion is now ripe for ruling.

## II. Relevant Factual History

### a. Pre-Vaccination Medical History

Petitioner's medical records from prior to her vaccination show no significant medical conditions, and specifically no injuries to or medical issues with her right shoulder, neck or arm. *See* Ex. 4-5.

### b. Post-Vaccination Medical History

Petitioner received the flu vaccine in her right arm at Walgreens Pharmacy in Hamden, Connecticut on December 13, 2017. Ex.1 at 1-2. She subsequently first sought treatment for her right shoulder pain from Dr. Louis Telesford at Hamdan Medical Group, on January 12, 2018 - 30 days after her vaccination. Ex.3 at 5. She reported that she "received flu shot a month ago at Walgreens" and was "experiencing pain in her right arm since the flu shot." Ex. 3 at 5. She described "on and off pains" and "popping" in her right shoulder. *Id.* Dr. Telesford diagnosed Petitioner with deltoid tendonitis, influenza vaccine adverse reaction, lateral epicondylitis of the elbow, and right rotator cuff syndrome, and prescribed physical therapy and Voltaren topical gel. *Id.* at 6.

Ms. Knudsen began physical therapy on January 16, 2018. Ex. 2 at 28. At her initial evaluation, she stated that the onset of her right shoulder pain occurred on December 13, 2017, after a flu shot.[4] *Id.* at 30. She described "an onset of severe pain, stiffness, and limited [upper extremity] function which has not improved with rest or anti-inflammatory medication." *Id.* Upon examination, Petitioner exhibited pain with motion as well as decreased strength and range of motion ("ROM"). *Id.* at 30-31. The physical therapist diagnosed shoulder capsulitis. *Id.* at 30.

Petitioner attended at total of 16 PT sessions during the remainder of 2018. Ex. 2 at 7. She also attended two PT sessions in early 2020. Ex. 7. Throughout this time, she showed good progress. *Id.* At her December 4, 2018 visit, it was noted that Ms. Knudsen had shown more than 90% improvement, with "minimal pain and no functional limitations at this time." Ex. 7 at 1. Petitioner transitioned to a home exercise plan ("HEP"), with instructions to follow up with physical therapy if symptoms worsened. *Id*.

---

[4] All of Petitioner's physical therapy records note the "Injury/Onset/Change of Status Date" as December 13, 2017.  Ex. 2, 7.

Petitioner returned to physical therapy on January 16, 2020, reporting "continued mild R posterior/lateral shoulder pain." Ex. 7 at 3. Petitioner explained that her symptoms "limit her ability to perform work duties, care for her children, perform household duties or sleep without pain, limitation or compensation." *Id.* The physical therapist diagnosed "capsulitis secondary to internal impingement." *Id*. at 7. Petitioner's final PT session, on January 27, 2020, noted improved ROM. *Id.* at 8.

There is nothing in the record as it currently stands to show Petitioner has since obtained further treatment of her right shoulder pain.

### c. *Relevant Affidavit Testimony*

Ms. Knudsen's Affidavit and Supplemental Affidavit describe the onset of her right shoulder pain in detail. Specifically, she stated that the administration of the vaccination itself was "quite painful" and that her "right arm became almost immediately frozen." Ex. 6 at ¶1-2. She explained that "immediately upon leaving, the arm that received the shot and the area around it was very hard and very sore, and [she] could not use it fully as [she] had just moments before." Ex. 8 at ¶1. She noted that her "mobility of the right arm had suddenly gone away." Ex. 6 at ¶2.

Petitioner's husband, Brian Knudsen, offered his own witness statement, reporting therein that Petitioner called him at work on the day of her vaccination, telling him "she had severe pain in her arm and that she was not able to bring [their] daughter's wheelchair into the house." Ex. 9 at ¶1. Similarly, Petitioner's mother, Nancy Smith, stated that Petitioner called her on the way home from her vaccination to ask whether her flu vaccination "had hurt really bad right after the shot." Ex. 10 at ¶1. Ms. Smith stated that Petitioner told her that "she had a hard time even steering the car and was concerned about lifting her daughter's wheelchair in and out of the car when she got her after school if it did not clear quickly." *Id.*

## III. Findings of Fact

### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). The Federal Circuit has said that

4

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized, however, that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of

5

the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). Indeed, as the Federal Circuit recently stated, although later oral testimony that conflicts with medical records is less reliable, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with contemporaneous records. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1382-84 (Fed. Cir. 2021).

**B. Analysis**

1. *Onset*

At issue first is whether Petitioner's first symptom or manifestation of onset after vaccine administration occurred within 48 hours as set forth in the Vaccine Injury Table and the second QAI for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B.; 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

Respondent argues that "no medical records describe the onset of right arm or shoulder pain occurring within forty-eight hours of the December 13, 2017 flu vaccination." Opp. at 7. Respondent further maintains that the notation from Petitioner's first post-vaccination doctor visit where she "reported intermittent arm pain *since* her vaccination" is not sufficient to meet her burden of proof. *Id.* (emphasis added).

In so arguing, Respondent seems to embrace the view that the only way Petitioner can show she experienced symptoms within 48 hours of vaccination is with contemporaneous records created *within* that two-day timeframe. However, the very terms of Vaccine Act allow that a "special master … may find the first symptom … of an injury … occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom … *was not recorded*" in contemporaneous medical records. 42 U.S.C. § 300aa-13(b)(2) (emphasis added). Ultimately, resolving how to weigh the evidence on such matters falls within the purview of the special masters. 42 U.S.C. § 300aa-13.

Here, there are more than sufficient records to support a finding of 48-hour post-vaccination onset. In multiple post-vaccination medical records, Petitioner consistently

6

reported right shoulder pain in connection with vaccination. *See* Ex. 2, 3, 7. Without fail, Petitioner attributed her injury to the flu vaccine she received on December 13, 2017. Indeed, she identified the precise date of onset as December 13, 2017, to her physical therapist at her initial evaluation on January 16, 2018. Ex. 2 at 5.[5] While these entries were based upon information provided by Petitioner, they still should be afforded great weight as they were uttered around the time Ms. Knudsen sought medical care for the alleged vaccine injury.[6]

In addition to the medical records, Petitioner provided affidavit testimony setting forth the immediate onset of pain at the time of vaccination. Petitioner stated that the shot administration itself was "quite painful" and that her "right arm became almost immediately frozen." Ex. 6 at ¶1-2. She stated that the "mobility in [her] arm had suddenly gone away." *Id*. at ¶2. Petitioner's mother stated that Petitioner called her on the way home from her vaccination and told her that she had trouble steering the car and to ask about her experience with painful flu vaccinations.[7] Ex. 10 at ¶1. Additionally, Petitioner's husband stated that she called him the day of vaccination, telling him about her "severe pain" and asking him for assistance in lifting their daughter's wheelchair out of the car. Ex. 9 at ¶1.

Here, the notation in the medical record from Petitioner's visit with Dr. Telesford on January 12, 2018, that she had "pain since the flu shot" is not contradicted by the affidavit testimony that Petitioner experienced pain and reduced functionality immediately upon vaccination.[8] Actually, the affidavit testimony provides consistent detail to the general note recorded by Dr. Telesford in the medical record.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

---

[5] All of Petitioner's physical therapy records also note the "Injury/Onset/Change of Status Date" as December 13, 2017.  Ex. 2, 7.

[6] The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

[7] Petitioner stated that the December 13, 2017 flu vaccination was her first. Ex. 6 at ¶1.

[8] The Federal Circuit has held that it is appropriate to credit the lay testimony of a petitioner when said testimony does not conflict with the medical records. *See Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021) (affirming special master's finding of severity based on petitioner's testimony in the absence of contemporaneous medical records).

2. *Injury Localized to Vaccinated Arm*

Respondent further argues that "the contemporaneous medical records show that [Petitioner's] pain and reduced range of motion were not limited *solely* to her right shoulder, the shoulder in which the vaccine was intramuscularly administered." Opp. at 7. Respondent bases this argument on two facts: (1) that at Petitioner's first post-vaccination doctor's appointment, she "was diagnosed with deltoid tendonitis and epicondylitis (painful inflammation of the tendons surrounding the bony protrusion at the elbow);" and (2) that at her initial PT evaluation, the "physical therapist documented paresthesia of the right upper extremity to the level of the hand." *Id.* After a review of all of the evidence, Respondent's argument is not persuasive.

Petitioner presented to her PCP on January 12, 2018, complaining of shoulder pain and "popping" in her right shoulder. Ex. 3 at 5. Upon examination, Dr. Telesford noted a "tender right lateral epicondyle with shoulder abduction," or more simply, pain in the tendon near Petitioner's elbow when Petitioner's arms were raised away from the body at the shoulder. *Id.* There are, however, no notations that Petitioner complained of elbow pain. At the same appointment, Dr. Telesford diagnosed Petitioner with deltoid tendonitis and right rotator cuff syndrome, both shoulder conditions. *Id.* And his prescription was for physical therapy to address "deltoid tendonitis."[9] *Id.*

Thereafter, Petitioner had 18 physical therapy appointments which focused solely on her right shoulder.[10] Ex. 2, 7. At her initial evaluation, the physical therapist noted that Petitioner had "RUE paresthesia to the level of the hand." Ex. 2 at 28. The notation as written makes clear, however, that the paresthesia stemmed from the "RUE" – right upper extremity – and not Petitioner's hand. *Id.* None of the physical therapy records otherwise mention any treatment to Petitioner's elbow or hand.

Beyond the two notations cited by Respondent, there is no evidence in the record that Petitioner complained of, or received treatment for, pain or injury outside of her right shoulder. While I acknowledge these references, they are outweighed by preponderant evidence in her medical and treatment records establishing that her pain and decreased range of motion was limited to her right shoulder. Respondent's emphasis on these contrary records appears rooted in the misapprehension that to satisfy the third QAI Table criterion, the relevant records must be devoid of all reference to pain or other symptoms outside the affected shoulder. However, a petitioner need only present preponderant, not

---

[9] Deltoid tendonitis consists of inflammation of the rotator cuff and other muscles and tendons of the shoulder.

[10] On January 17, 2018, Petitioner received testing to determine whether there was cervical involvement, which was negative. Ex. 3 at 27.

certain, evidence to prevail. *See Moberly ex. rel. Moberly v. Sec'y of Health & Human Servs,* 592 F.3d 1315, 1322 (Fed. Cir. 2010) (holding that the applicable level of proof is not certainty, but the traditional tort standard of "preponderant evidence"). And the fact that a claimant reports *other* pain or injuries not pertaining to a particular vaccine injury only means that those distinguishable injuries are not an additional basis for recovery.

Ms. Knudsen complained of and was treated for pain and limited range of motion to her right shoulder. I therefore find there is preponderant evidence to support a finding that Petitioner has satisfied the third QAI Table requirement for a SIRVA injury.

### IV.     Requirements for Table SIRVA

Because I have determined the onset of her right shoulder pain occurred immediately upon vaccination, and that her injury was localized to her vaccinated arm, Petitioner has fulfilled the second and third of the four QAI Table criteria. *See* 42 C.F.R. § 100.3(a)(XIV) (Table entry for SIRVA following influenza vaccine); 42 C.F.R. § 100.3(c)(10)(ii) (second QAI requirement); 42 C.F.R. § 100.3(c)(10)(iii) (third QAI requirement). To establish that she suffered a Table SIRVA, Petitioner must satisfy the additional two QAI requirements. 42 C.F.R. § 100.3(c)(10)(i), (iv).

Respondent has not contested Petitioner's proof on the first and fourth QAI Table criteria. *See* Opp. at 1-7. Further, the record in this case contains no indication that Petitioner suffered prior right shoulder issues. *See* 42 C.F.R. § 100.3(c)(10)(i). Nor is there evidence of any other condition or abnormality that would explain the right shoulder pain she experienced. *See* 42 C.F.R. § 100.3(c)(10)(iv).

Thus, Petitioner has satisfied all QAI criteria for a Table SIRVA.

### V.     Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows Petitioner received the flu vaccine in her right deltoid at a Walgreens Pharmacy in Connecticut. Ex. 1 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed

any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 6 at ¶6; *See* Section 11(c)(1)(E) (lack of prior civil award).

Finally, the medical records show that more than six months after vaccination, Petitioner continued to suffer the residual effects of her SIRVA. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Petitioner received her vaccination on December 13, 2017. Ex. 1 at 2. Thereafter, she received continuing treatment, with no significant gaps, through at least December 4, 2018, a period of nearly one year. Ex. 2-3. Further, Petitioner returned to treatment in January 2020 due to returned symptoms. Ex. 7 at 3-8. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## VI.    Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master